The next matter, No. 24-1289, George Roderick II v. Hearst Communications, Inc., et al. At this time, would counsel for the appellant please introduce himself on the record to begin? If it pleases the Court, I'm Ilya Feoktistov. I'm counsel for the appellant. If it pleases the Court, may I reserve three minutes for rebuttal? You may. Thank you, Your Honor. This case comes to this Court on summary judgment. So the very key issues revolve around proof. And the Title VII religious discrimination cases are unusual in the sense that they involve proof from three completely incompatible epistemologies. Religion, science, and law. And the Prima Facie case, which involves a conflict of a religious belief with an employer requirement, it purely depends on religious truth, not scientific or legal. And it's easy for the Court below and for the appellee to call such religious truths, as they are expressed by the appellant, hypocritical or superstitious, as wrong according to the law or according to scientific fact. But that's not the standard that the Prima Facie case requires. The standard is religious truth. Now, religious truths are received irrationally from subjective divine revelation. Scientific truths, on the other hand, are obtained rationally from expert observation of objective fact. And legal truths are simply consensus opinion, whether by the majority or the courts. These are totally immiscible epistemologies, but the lower court and the appellees went ahead and mixed them anyway. The Prima Facie showing of a religious conflict under Title VII is indeed a matter solely of religious truth. The court or the parties can't discover conversation that the appellant may have had his creator. So the court must indeed look to the appellant's own account of his beliefs. What do you propose we should focus on as the asserted religious truth here that was overborne by the employer? Two religious truths that the appellant believes are primarily important. And these are religious truths that have been repeated in courts across the country, COVID-19 cases of religious accommodations to vaccinations. One pretty common one is that my body is a temple religious objection. This is an objection to the use of artificial substances inside the body. The other one is an objection to fetal cells, which the appellant believes, as a matter of religious truth, were used in the research and development of the COVID-19 case. So let's assume for purposes of summary judgment that we assume those are qualifies religious truths and were sincerely held. So we get to the issue of undue hardship as asserted by the employer. The employer's undue hardship claim, as I understand it, is that it would have to incur a substantial number of costs to prevent unvaccinated persons from potentially threatening the health of others in the workplace. Yes, Your Honor. So this undue hardship argument relies on one proposition that the appellees hold as a religious truth, but is actually a scientific truth, whether or not the vaccine actually prevents COVID-19 transmission. Because if it doesn't, then there's no proof that it does or doesn't in this case. And I think you've framed your undue hardship analysis in your brief, as I read it, as narrowing down and pivoting on that point, being that if it is valid, then you lose. But if it isn't and isn't supported properly, then you win, at least for summary judgment purposes. I believe so. If the claim that the vaccines prevent transmission to an extent that all those extra costs coming from trying to prevent transmissions by other means than vaccination is true, then perhaps. And is proven. And that's very important because, again, we're dealing here with proof, with scientific proof, which requires expert observations of objective fact. And the appellees did not make that showing. They didn't even try. In the record, there's a Los Angeles County vaccine and fetal cell lines publication from a public agency that says flat out that by getting vaccinated, you protect others. So why isn't that sufficient? And there's nothing contrary in the record that says it doesn't. So why, for summary judgment purposes, isn't that decisive? That's a hearsay opinion and a scientific opinion. It's an opinion of a public health agency, which I believe the court in Bragdon said that's what we should look at in the first instance. If it's a factual statement, the court in Bragdon was dealing with pure statistics of numbers of disease cases in a certain region. And that's a statement that could be susceptible to judicial notice. A statement that depends on a massive amount of scientific inference, of expert knowledge and opinion, I believe requires the protections of rules, federal rules of evidence related to expert opinion. But treatises can be put in, publications. We could take judicial notice of the CDC government publication, couldn't we? Again, the judicial notice of the CDC government publications is limited, according to the Bragdon case, solely to statements of primary fact, of statistics. Whether COVID-19 vaccines prevent transmissions of the SARS-CoV-2 virus is not a primary fact. It depends on multiple inferences that require expert opinions and require them to be tested through the rules of evidence process, through the Daubert process for expert opinions in these situations. And all we have are pretty much the opinions of human resources executives with no expert training who relied on websites. And that's a major problem in a lot of these cases. Counsel, so is it your position that employers can't rely on public health agencies, the federal government, the CDC, in concluding that the vaccine would in fact help prevent the disease? You think each employer has to prove it in each case, you know, case by case across the country, that in fact with expert testimony that in fact the vaccines do have that effect? Is that your position? I do believe that at this stage, given the changing science, as can be judicially noticed, the fact that COVID-19 vaccines have been proven, have been shown to not be, we can at least agree, 100% effective at reducing transmission, that I think the courts really need to look at this. But there's no claim here by the employer that they thought it was 100% effective. They just thought it would, the odds were fewer people would potentially die. And they felt that having their employees die was not a good thing. Yes, Your Honor. So this situation implicates the issues raised in the Carvico case out of the Ninth Circuit, where that, you can't just assume undue hardship like that. If you're not assuming it, as Judge Rickleman is pointing out, you're an employer, and the CDC and national health officials have all told you, you better do this to keep some of your employees from dying. And they're not going to do it because they're going to say, well, you guys are just public health agencies. I need to hire an expert who tells me what you're saying is right. There was no direct claim by the CDC that the employees, all employers should be vaccinated. There was never an employer mandate to vaccinate. No, but the CDC said. There may not have been a mandate, but it's clear the CDC materials make it clear that the agency's conclusion is that the vaccine, at the very least, reduces the risk of transmission and the dangers that accompany transmission. That is no longer the CDC's conclusion. And, in fact, if one looks at the website. Well, aren't we concerned with what the CDC's conclusions were at the time of the employer's actions? Well, that's a major problem because scientific truths do not change in time. And that's the whole problem. We can't take a fixed scientific period in time and then rely on it for the rest of time. And we'd be stuck in geocentrism. But when an employer takes an action and predicates that action on scientific advice from the CDC, that action, the action itself, can't be made tortuous or actionable because a year later or six months later, the agency changes its mind. Businesses, I would think, are entitled to rely on what the government is saying, as long as it says it authoritatively and in the proper form at any given time. Yes, Your Honor. The businesses are allowed to rely on that. But at that time, as I briefed, the CDC's advice and, in fact, the signs, and, in fact, the appellee's own reporting. So this was already in the public domain. The appellee's own reporting claimed that the vaccines were not effective, that there would need to be new vaccines developed, and that these were basically useless transmission would still occur, which destroys the entire House of Cards undue hardship argument of the appellees. Counsel, can I just, I just want to make sure I understand your argument. What exactly do you think the employer needed to prove to establish the undue hardship defense sufficient to get summary judgment? What precisely that the vaccines were 100% effective at avoiding transmission at the time, or how would you frame exactly what they needed to prove that you think they did not prove? That's a tough question because it's not my burden of proof, but I would argue that statistical evidence of transmission rates, unvaccinated versus vaccinated, and there should be a significant difference, statistically significant difference between the two. Thank you, Counsel. Thank you, Counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin. May it please the Court, Stephen Juhant for the appellees. The district court correctly granted summary judgment on the appellant's religious accommodation claim here based on the summary judgment record. And the posture of summary judgment is critical here because, unlike some other plaintiffs raising similar types of claims, this plaintiff was allowed to go to discovery. He was allowed to create a record. And so now we have a summary judgment record, and what it shows is that this accommodation request is the only documented instance in this man's entire life in which he has expressed the views that he claims prevented him from complying with the vaccination policy. There is absolutely no communication produced in discovery, nothing on the record that would support that, except the fact that he did. So are you saying for summary judgment purposes, this should have been a determination of a lack of sincerity? I don't think that you had to reach the issue of sincerity. Well, if we're not going to reach the issue of sincerity, what do we care about the fact that this is the first time he raised it? Because, Your Honor, the question of whether or not the appellant, the claimant's, opposition to the vaccine policy was based on a sincerely held religious belief, you take what is the asserted basis, and then you measure that against the record to see if that fits with what the record shows. That's the analysis of the court. Well, now you're talking about sincerity. I don't believe so, Your Honor, and that's not the way that the court is like. If it's not sincerity, what element of the offense, of the liability are you talking about? Sure. So in Fallon, for example, in the Third Circuit, that's a motion to dismiss case in which the course held that the opposition to the policy was sincere. It was sincerely held that the plaintiff did not want to get the vaccine. But the question was, was the basis religious or not? But sincerity. So now you seem to be saying you are challenging the sincerity of the asserted religious belief, specifically the fetal cell line. Well, what we're challenging, Your Honor, is that the plaintiff's opposition to the vaccination was, in fact, based on a religious belief. So you're saying it wasn't? What I am saying is, although his opposition to the vaccination was sincere, that belief is not a religious belief. Okay. So then what do we care about whether he had it or didn't have it at an earlier time? It's either a religious belief or it's not, unless you're questioning sincerity. I'm just getting confused as to whether you're actually challenging the sincerity of his asserted religious belief, or instead what you're saying is what he asserts as a religious belief is not, in fact, a religious belief. Understood, Your Honor. And I appreciate the opportunity to clarify, because I agree these concepts are very interrelated and intertwined. And what I would say is this. Because sincerity doesn't sound like the type of thing we're going to resolve on summary judgment. That's why I'm pressing this. I think the case law is pretty clear. Sincerity is a question of fact. Well, let me take the questions one at a time, if I may. So the case law is clear that sincerity is not usually an issue that is susceptible to summary judgment. That much is true. However, what I would say is that there are instances where motive and intent are susceptible to summary judgment, when the record is clear and one-sided as it is here. So you are arguing that for summary judgment purposes, we should say that no reasonable fact finder could find his assertive religious belief to be sincere. Is that what you're saying? Yes. And what I would say is no reasonable fact finder could find that his opposition to the vaccination policy was based on a religious belief. But those are, I guess, what we're trying to understand from you. We view those as two separate inquiries. There's the question whether the belief that you hold is religious or something else, you know, pure moral code. And then there's the question of whether that belief, whether it's religious or not, is sincerely held. Could we ask you to focus on the first part, which is whether it's a religious belief? So what is your argument about why it was not a religious belief? Yes, Your Honor. So the argument as to why it's not a religious belief flows directly from the case law starting in Fallon in the Third Circuit and moving on to cases like the Ocamp-Corcoran case as well as the Kennedy versus PEI case. And in those cases, what the courts have determined is that where the opposition to a vaccination policy flows from a personal concern, a medical concern, as is the case here, that's the undisputed record that you have the plaintiff who has said in public statements again and again, both before his request was made, while his request was pending, and after the determination was made, consistently the opposition to the vaccine that he has articulated has always been medical, except in this very specific context. And so when courts have been faced with that fact pattern, whether at the pleading stage, but especially at the summary judgment stage, the courts have found that opposition flows from an isolated teaching, not from a comprehensive system of beliefs. And that's what's required to distinguish between a personal concern and a religious concern. That goes all the way back to cases, for example, from this circuit, from the EEOC case, where the court is very careful to say an employer has no Title VII duty to accommodate a personal concern. So you're saying he says that his sincerely held religious beliefs are an amalgamation of things he picked up in spiritual practices, including being raised as a Catholic and attending St. John's High, and that one of the things he learned is abortion is a sin against God, and that because these vaccines were developed using fetal cell lines, he cannot in good conscience let them enter his body. Why isn't that a qualified, for summary judgment purposes, as a religious belief? Because, Your Honor, you can't take the asserted belief on its face just in isolation. You have to look at that in conjunction with the totality of the record to find, is the opposition, does it actually flow from that belief? So if you want to just look at the pleading state of religion. Well, if that belief is sincere, which it seems to me, for summary judgment purposes, we have to assume that it is, then it would seem to follow inexorably that taking something that was developed using fetal cells would conflict with that sincerely held belief. Well, again, Your Honor, I think the first thing I would say to that is that there's nothing in the record that actually demonstrates that the vaccines at issue here were developed using fetal cell lines? Well, no, there is in the record that same form from Los Angeles that they were tested using fetal cell lines. Yeah. Part of developing a vaccine is to test it to make sure it works. And, Your Honor, without getting too deep into the weeds, we tried to access that same website, the same URL at that website, and were unable to do so. That is also in the record in my supplementary declaration. That page does not exist on the L.A. County website as far as we know. So did you move to have it stricken from the record? We did not move to have it stricken from the record. Did the judge strike it from the record? As far as I know, he did not. So are you suggesting we can ignore it? What I am suggesting, Your Honor, is that the court below properly ignored it, and that that decision, that evidentiary decision— In other words, as if it had stricken it, even though we don't have a ruling that it's not authentic or not. Well, it's not just that—it would be one thing if the district court's opinion was silent on that subject, but we know the district court opinion is not silent on that subject. There is a footnote in the district court opinion specifically saying the plaintiff has come forward with no credible evidence on this point. So we know— But it doesn't specifically address—it doesn't say, I looked at this part of the record and concluded that it was not sufficient for XYZ reasons, right? The footnote just says there's nothing in the record. That's correct. That's correct, Your Honor. More fundamentally, what I would say, though, is at the pleading stage, it may be enough to rely solely on the way, for example, in our case, the way that an employee fills out a questionnaire, the way that an employee phrases what's in their request to say, okay, as a pleading matter, I think it is plausibly enough stated that there's a connection between that and the plaintiff's religion. However, once you get to summary judgment and you're looking at the full totality of the record, it's not enough to just look at the four corners of what the request—what the claim is on its face. You also have to say, is this actually animating the conduct here? And again and again, what the district courts have found and again what the Third Circuit found, at the pleading stage even, is to say, well, if the vaccine opposition stems from a personal and medical concern, which here I don't think can be seriously disputed, then that is not something that is equivalent to a religious concern. But, counsel, why do you say that can't be disputed here? Because I read the testimony of the plaintiff here, and he did say, you know, his religious views have evolved. They sort of coalesced right around the time of COVID-19, but that it was his religious opposition to taking this vaccine because of the fetal cell line issue, in addition to the fact that he thought it wasn't effective. He said both things, so why isn't the first part of what he said sufficient to show a religious belief? Your Honor, that's because that is completely contradicted by the objective evidence of what actually occurred in this case. What do you mean, what objective evidence? Sure. We know that he repeatedly took other medications that posed, without thinking about whether they posed the exact same issue, and he specifically testified in his deposition that the reason he felt it was okay to take those other medications and not the COVID vaccine had nothing to do with his religion. It was because, as he testified in his deposition, I don't believe the vaccine is intended to save my life, and we know it doesn't work. But isn't that a common part of many religions, that there is a rule, but the rule can be relaxed if somebody's life is at stake? I think that's actually a common thread in many religions. Certainly, Your Honor. So again, simply because he thought that he needed to take his blood pressure medication and his anti-anxiety medication because he viewed them as close to life and death, but he didn't see the COVID vaccine that way, and then he said, since it's not a question of life and death, I don't want to take it, because of the fetal cell lines issue. Why is that not a religious belief? Again, putting aside the sincerity. Sure. So, number one, I do think it's important to just note for the record that we also have him taking the acid reflux medication, which isn't really about life and death. But more fundamentally, Your Honor, to answer your question, what's important about the Title VII context is that it requires a dialogue between the employer and the employee. The combination, the sort of interactive process, right? And that entire process is kicked off by what the employee tells the employer about what the conflict is between the employer's policy and the employee's beliefs. And so that's why here, what you have is an employee who has told the employer, I cannot, under any circumstances, let the vaccine enter my body. He is the one who phrased his religious claim in those absolute terms. So I completely take the point that there are lots of religious faiths and traditions that are qualified on their face, that have exceptions and things like that. But that's not what he claimed here. He was very specific and affirmed that what he was claiming is that I cannot take the vaccine under any circumstances. And it's that belief that we have to test. And what we found, and what the Summary Judgment Record finds, is that that is simply not a belief that is supported by the record. Instead, what you have is an opposition to the vaccine, which is manifestly derived from concerns about efficacy, concerns about safety. And so when you look at the totality of the record, you undertake that analysis, like in Ocamcorphan, for example, with the flu vaccine, or Kennedy with the COVID vaccine. What you find is that it's the medical concerns that are animating the conflict. It's not a religious concern. And that's critical here because for the employer to accommodate the belief, the employer has to understand what belief it's accommodating. And when you look at the belief here, it is not a religious belief. It is a medical belief. Counsel, the employer here actually decided not to accommodate on undue hardship grounds, not on failure to allege a valid religious objection, correct? That is correct, Your Honor. So in terms of undue hardship, what is in the summary judgment record on that issue? Certainly, Your Honor. What's in the summary judgment record on that issue are declarations from the station's general manager, Kyle Grimes, as well as the HR representative who handled and processed this request, Kristen Hansen. And those declarations are not controverted. Mr. Grimes testified as to what Mr. Rodriguez's job responsibilities were, what the station's operations involved, and what was required for the station to conduct its operations. What Ms. Hansen testified to was what input she considered, and that included the CDC guidance. And then she applies that to what she understands about the station's operations and what she understands about Mr. Rodriguez's job responsibilities. And what she concludes in her declaration that sets this out is that in order to fulfill the functions of his job, he would have to be in close contact with his colleagues and potentially members of the public, and what that would mean is that he would be potentially a vector for the spread of disease. And that's not just a health and safety concern. That is also a concern about the disruption to the station operations, which is not rebutted here. That in the event that there were an outbreak, that multiple people at the station could have to be put on the bench, for example, and unable to work, right? And that would be an obvious disruption to the station's operations. Counsel, what about the circumstances of the station if any would have made a testing policy, for instance, not appropriate? I think I recall one of the concerns that the company had is that if driving to a shoot or, you know, a reporting event that the employees needed to drive in sort of a car together, which is obviously a contained small space where you can't socially distance. But why wasn't testing looked at as an alternative? So there was a testing policy that was put in place before the vaccination mandate went into place, and the testing policy was found not to be sufficiently protective of the station and of its interests because the testing can only detect when you are already infected. By that point, it's too late. You already have to undergo things like contact tracing and the potential disruption that all of that entails. But moreover, even the very act that I think your honor is referencing, the very act of having to maintain separate vehicles for various crew members, it goes to the kind of hardship that this would pose because you would have to have Mr. Rugby, as an unvaccinated individual, probably have to take his own vehicle for an indefinite period of time. And not only that, he would also be restricted on what assignments he could take. He couldn't, for example, be put on an assignment that took him out of state that required some sort of quarantine. He couldn't go to any sort of shoot that would require all members of a crew to be vaccinated, whether it's indoors or outdoors. And all of those things are critical to the operation of a local news station, whose very business is to cover the news. And so that sort of flexibility is a sort of thing where if they cannot deploy the people as needed, that creates an undue hardship to the station. And for that reason, unless there are any other questions, we would rest our briefs. Just one question. As I read your brief, you didn't address Bragdon. Yes, so your honor, Bragdon is a case that involves the direct threat, which is an interpretation of the statute of the ADA. And as far as I'm aware, your honor, there isn't a single instance in which a court has ever applied Bragdon and cited it to a Title VII religious accommodation context. That sort of standard is specific to the definition of qualified disability in the Americans with Disabilities Act, and it is not a standard that's been adopted, as far as I'm aware, in any religious accommodation case whatsoever. Judge Stelle, anything further? No, I'm content. Thank you. Thank you, counsel. At this time, would counsel for the appellate please reintroduce himself on the record? He has a three-minute rebuttal. Ilya Feoktistov for the appellant. So I just want to reiterate that as to the due hardship, the appellees didn't move the ball past the state of Carvajal, the Ninth Circuit case, and the other 12B6 cases. In those cases, there, too, was a website link from the CDC. There was a claim by non-expert individuals. In some cases, there were even affidavits at 12B6 stage from prior injunction motions. But the court there said specifically that you have to move the ball on summary judgment. You need expert opinion on summary judgment. And I believe that this is the fact, as my brother pointed out, that the L.A. Health Department's website is now missing just goes to show that we cannot rely on ephemeral websites from public health organizations that are dated how long ago. We don't know. These are unreliable sources. Can't be held to be authenticated. As for the fetal cell issue on that website, it doesn't really matter what that website says about the fetal cell issues. My client can believe in that and have it completely be wrong according to science, just like his belief that his Y transforms into blood is completely wrong according to science, but it is still a religious belief. So this is where the difference between scientific truths and religious truths really comes in, because you can't just make up scientific truths and religious truths. But, counsel, then I'm just trying to understand how that would relate to the undue hardship arguments. I mean, that would have to be based on scientific evidence. You do agree with that, right? That's provable based on the usual rules. Yes, the undue hardship is entirely scientific evidence, and in cases like Lowe v. Mills, a matter of law, a matter of consensus, because in Lowe v. Mills, the state of Maine, as a matter of consensus, decided that the appellant in that case must be vaccinated as a matter of law, and there was a law on the books, and the undue hardship came from violating that law. There was no law on the books here that the appellees have pointed to to say that Mr. Rodrigue had to be vaccinated, and that makes all the difference. Thank you. Thank you. That concludes argument in this case.